IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02766

JOHN MEGGS, an Individual, and
ACCESS 4 ALL, INC., a Florida Not for Profit Corporation

        Plaintiffs,

vs.

MISSION CENTER PARTNERS LLC, a Colorado Limited Liability Company,

        Defendant.

_____/

# COMPLAINT

## Introduction

Plaintiffs, JOHN MEGGS, an individual, and ACCESS 4 ALL, INC., a Florida Not for Profit Corporation ("Plaintiffs" or "Plaintiffs"), on their behalf and on behalf of all other-mobility impaired individuals similarly situated hereby sues the Defendant, MISSION CENTER PARTNERS LLC, a Colorado Limited Liability Company ("Defendant"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 *et seq*. ("ADA") and the Colorado Anti-Discrimination Act, C. R. S. § 24-34-601 *et seq.* ("CADA").

## The Parties

1.     Plaintiff, JOHN MEGGS, is an individual over eighteen years of age and is otherwise sui juris.

2.     Plaintiff, ACCESS 4 ALL, INC., is a Florida Not for Profit Corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation.

1

This entity was formed under the laws of the State of Florida and remains in good standing.

3. Defendant, MISSION CENTER PARTNERS LLC, a Colorado Limited Liability Company, owns, leases, leases to, or operates a place of public accommodation, in this instance a shopping center/plaza, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

### Jurisdiction and Venue

4. Defendant's property is a large shopping center/plaza, also known as Mission Trace, located in Thornton, CO with addresses of 3811, 3831, 3851, 3861, 3907, 3909, 3911, 3961 E. 120th Ave, Thornton, CO 80233, within the Adams County ("Subject Property").

5. Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

6. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

8. The Defendant, MISSION CENTER PARTNERS LLC, owns and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the ADA.[2]

9. Plaintiff, JOHN MEGGS, is an individual with disabilities as defined by and pursuant to the ADA.  Mr. Meggs is a paraplegic, with no use of his legs, stemming from a severe spinal cord

---

[1] *See, also*, 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 C.F.R. § 36.201(a) and 28 C.F.R. § 36.104

injury and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk or stand.

10.     Mr. Meggs requires the use of a wheelchair, at all times, to ambulate and is a member of the Plaintiff organization, Access 4 All, Inc.

11.     Plaintiff organization, ACCESS 4 ALL, INC., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

## Factual Context

12.     Mr. Meggs is a staunch advocate of the ADA. Since becoming aware of his rights, and their repeated infringement, he has dedicated his life to this cause so that he, and others like him, may have full and equal enjoyment of public accommodations without the fear of discrimination and repeated exposure to architectural barriers.

13.     Mr. Meggs encounters architectural barriers at many of the places he visits. Seemingly trivial architectural features such as parking spaces, ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, are cumbersome, arduous, and even dangerous for him and other wheelchair users.

14.     The barriers to access that Mr. Meggs experiences at differing places of public accommodation are similar in nature. For example, he is repeatedly faced with sloping in parking lots, cracks in sidewalks and asphalt, and improper restrooms and water closets (even when designated "accessible" or "handicapped"). He is often angered and disheartened by the repetitiveness of the complaints he is forced to make to employees and management, to no avail.

---

[3] as defined by 28 CFR § 36.105(b)(1-2)

Mr. Meggs is fully aware that the only way to affect change is through the ADA.

15.     Mr. Meggs has visited the Subject Property on multiple occasions, his most recent visit to the interior of the shopping center tenant spaces occurred on or about April 12, 2022. On this occasion, Mr. Meggs visited the Subject Property as a bone fide purchaser/patron to avail himself of the goods and services offered to the public within but found that the Subject Property contained many violations of the ADA, both architecturally and in policy. Mr. Meggs subsequently returned to the exterior of the property in August 2022, but no change in condition was observed.

16.     Although a California resident, Mr. Meggs travels to Colorado several times per year, both for pleasure and for business meetings pertaining to the operation of Access 4 All, Inc.

17.     The Subject Property is not the type of accommodation that requires reservations, but Mr. Meggs intends to return on or about November 1, 2022, and on or about February 1, 2023, during visits to the Denver metropolitan area where he is a frequent traveler and regularly conducts business pertaining to Access 4 All, Inc.

18.     Mr. Meggs intends to revisit the Subject Property not only as a bone fide purchaser but also to monitor any progress made with to respect to ADA compliance.

19.     Mr. Meggs has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Subject Property.

20.     The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

21.     Mr. Meggs has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property, as described, but not necessarily limited to, the barriers he has personally experienced which are listed in paragraph 26

of this Complaint.

22.     Following any resolution of this matter Mr. Meggs will ensure that the Subject Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in the parties' settlement agreement or as ordered by this Court.

**COUNT I**

**Violation of Title III of the
Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.**

23.     The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

24.     The Defendant has discriminated against the Plaintiffs, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by the ADA.

25.     A preliminary inspection of the Defendant's property has shown that violations of the ADA exist.  That inspection, performed by Plaintiffs' expert, further revealed that the remediation of all violations/barriers listed in paragraph 26 are both technically feasible and readily achievable.

26.     The following are architectural barriers and violations of the ADA that Mr. Meggs has personally encountered during his visits to the Subject Property:

**Parking and Exterior Paths of Travel**

- a. The designated accessible parking spaces throughout the Subject Property contain sloping and cross-sloping greater than the allowable limits; violation of the ADAAG and Section 502 of the 2010 ADA Standards.  The sloping within the parking spaces has presented Mr. Meggs with a tipping hazard and the inaccessible parking spaces have forced Mr. Meggs

to park in open areas of the parking lot where he could freely access his vehicle without the fear of becoming blocked out by other vehicles. The remediation of these barriers is both technically feasible and readily achievable.

b. The designated accessible parking spaces at the Subject Property lack proper access aisles (they are not the requisite width and contain excessive sloping and cross-sloping), in violation of the ADAAG and Section 502 of the 2010 ADA Standards. In conjunction with the above and due to the lack of compliant accessible parking Mr. Meggs has been forced to park away from the shopping center to ensure that he could freely and safely access his vehicle. The remediation of these barriers is both technically feasible and readily achievable.

c. The Subject Property does not provide the required amount of compliant accessible parking spaces, in violation of ADAAG Section 4.1.2 and Section 502 of the 2010 ADA Standards. Again, due to the lack of compliant accessible parking Mr. Meggs has been forced to park away from the shopping center to ensure that he could freely and safely access his vehicle. The remediation of these barriers is both technically feasible and readily achievable.

d. The Subject Property does not contain the proper signage required for the identification of accessible parking; a violation of ADAAG Section 4.6 and Section 502 of the 2010 ADA Standards. Due to the lack of proper signage Mr. Meggs could not easily identify the accessible parking areas. The remediation of this barrier is both technically feasible and readily achievable.

**Entrance Access and Path of Travel**

e. Curb ramps are not provided in all areas of the Subject Property and those which are provided do not fully comply with the ADAAG nor the 2010 ADA Standards; as such they

are unsafe for use by Mr. Meggs. The curb ramps present at the Subject Property contain excessive sloping and lack the required level landing areas; in violation of ADAAG Sections 4.1.2, 4.3, 4.7 and 4.8, as well as Sections 402, 403, 405, and 406 of the 2010 ADA Standards. These curb ramps are located along the exterior accessible route and their improper design has forced Mr. Meggs to navigate through excessive sloping, abrupt changes of level and a diminished turning radius at the top of the curb ramps - these are all tipping hazards which have caused Mr. Meggs distress and could cause a fall from and damage to his wheelchair. The remediation of these barriers is both technically feasible and readily achievable.

f. The exterior accessible routes at the Subject Property contain abrupt changes of level, gaps in the path of travel, and excessive sloping/cross-sloping which exist in violation of ADAAG Section 4.3 and Sections 402 and 403 of the 2010 ADA Standards. While traveling from the parking area to the facility, Mr. Meggs has been forced to travel through tipping hazards which could cause a fall from and damage to his wheelchair. He has also been forced to travel around these obstacles and into the traffic area of the center which has put him in danger of encountering moving vehicles. The remediation of these barriers is both technically feasible and readily achievable.

g. The exterior ramps at the Subject Property lack the requisite handrails and contain excessive sloping beyond the allowable limits, in violation of Section 4.8 of the ADAAG and Section 405.8 of the 2010 ADA Standards. The lack of proper handrails and excessive sloping has made the use of these ramps unsafe for Mr. Meggs as they have presented him with a tipping hazard which could cause a fall from and damage to his wheelchair. The remediation of these barriers is both technically feasible and readily achievable.

h.  The Subject Property fails to provide a safe, compliant, and accessible route to the street or sidewalk; in violation of ADAAG Sections 4.1.2 and 4.3 and Sections 206.2.1, 402, 403, 405, and 406 of the 2010 ADA Standards. Due to this barrier Mr. Meggs could not access the Subject Property from those areas, thereby limiting his options for access. The remediation of this barrier is both technically feasible and readily achievable.

**Access to Goods and Services**

i.  When attempting to enter tenant spaces at the Subject Property, Mr. Meggs is impeded by a lack of adequate maneuvering clearance at the doors, in violation of ADAAG Section 4.3 and Section 402 of the 2010 ADA Standards. Due to these barriers Mr. Meggs could not enter the tenant spaces freely without assistance. The remediation of these barriers is both technically feasible and readily achievable.

j.  Payment counters/writing surfaces within tenant spaces Old Chicago Pizza and South Philly Cheesesteaks are not the mounted at the appropriate heights and equal facilitation is not provided; in violation of ADAAG Section 7.2(1) and Sections 308 and 902 of the 2010 ADA Standards. Due to their elevated height Mr. Meggs could not make use of these surfaces. The remediation of these barriers is both technically feasible and readily achievable.

k.  Restaurant table-top surfaces within tenant spaces Old Chicago Pizza and South Philly Cheesesteaks are not the appropriate height and lack the knee and toe clearance required; in violation of the ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of accessible tables Mr. Meggs could not dine in a comfortable manner.

**Restrooms**

l.  The restrooms provided within tenant spaces are not ADA compliant and are unsafe for

use by Mr. Meggs. The barriers to access personally experienced by Mr. Meggs within the restrooms include inaccessible water closets which lack proper controls, improper centerlines, improperly mounted grab bars, improper door hardware, a lack of requisite clear floor space, and improperly mounted dispensers; in violation of ADAAG Sections 4.16 and 4.17 and Section 601 of the 2010 ADA Standards. The remediation of these barriers is both technically feasible and readily achievable.

m. Grab bars within the restrooms at Old Chicago Pizza, South Philly Cheesesteaks, and Subway are improperly mounted, a violation of ADAAG Section 4.16 and Sections 604 and 609 of the 2010 ADA Standards. Mr. Meggs could not safely/freely use these restrooms due to the improper location of the grab bars. The remediation of these barriers is both technically feasible and readily achievable.

n. The restrooms within Old Chicago Pizza, South Philly Cheesesteaks, and Subway contain improper centerlines for the water closets, and flush controls which are mounted on the wall side; a violation of ADAAG 4.16 and 4.17 and Section 604 of the 2010 ADA Standards. Mr. Meggs could not access the flush controls due to their improper location while improper centerlines make toilet transfer exceedingly difficult; thus Mr. Meggs has been unable to make full use of these restrooms without assistance. The remediation of these barriers is both technically feasible and readily achievable.

o. The restroom within Subway contains a mirror which is improperly mounted, a violation of ADAAG Section 4.16.6 and Section 603.3 of the 2010 ADA Standards. Mr. Meggs could not make use of the mirror because it is mounted too high. The remediation of this barrier is both technically feasible and readily achievable.

p. The use of restroom doors at South Philly Cheesesteak is impeded by an improper

        doorknob and a lack of requisite maneuvering clearance to enter/exit the restroom; violations of ADAAG Section 4.13.9 and Section 404 of the 2010 ADA Standards. Due to the lack of maneuvering clearance and the round doorknob, Mr. Meggs was unable to access the restroom easily or without assistance. The remediation of these barriers is both technically feasible and readily achievable.

q. The restrooms located within Old Chicago Pizza, South Philly Cheesesteaks, and Subway provide dispensers (paper towel, toilet tissue, soap) which are mounted improperly beyond Mr. Meggs' reach, a violation of ADAAG and Section 308 of the 2010 ADA Standards. While using these restrooms Mr. Meggs could not access the dispensers due to their improper location. The remediation of these barriers is both technically feasible and readily achievable.

r. The toilet stall door within tenant space Old Chicago Pizza is not self-closing and contains improper hardware, a violation of the ADAAG and Section 604 of the 2010 ADA Standards. Mr. Meggs could not use the stall without assistance. The remediation of this barrier is both technically feasible and readily achievable.

s. The restroom located within tenant space Old Chicago Pizza does not contain the requisite maneuvering clearance or adequate clear floor space needed for entering nor exiting; a violation of the ADAAG and Section 308 of the 2010 ADA Standards. Due to the foregoing Mr. Meggs could neither enter nor exit the restroom without assistance. The remediation of this barrier is both technically feasible and readily achievable.

27. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 C.F.R. part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and

Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 C.F.R. § 1191, appendix B and D;  and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[4]

28. The discriminatory violations described in paragraph 26 may not be an exhaustive list of the ADA violations that exist at the Subject Property, but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Meggs. Plaintiffs require a thorough inspection of the Defendant's place of public accommodation to photograph and exactly measure the architectural barriers which exist at the Subject Property in violation of the ADA.

29. Mr. Meggs, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

30. Defendant has discriminated against Mr. Meggs, and all those similarly situated, by denying him/them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

31. Defendant continues to discriminate against Mr. Meggs, and all those similarly situated, by failing to remove architectural barriers, and communication barriers that are structural in nature.[5]

32. Defendant continues to discriminate against Mr. Meggs, and all those similarly situated, by failing to make reasonable modifications in policies, practices, or procedures, when such

---

[4] 28 C.F.R. § 36.104
[5] 42 U.S.C. § 12181(b)(2)(A)(iv)

modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[6]

33. Defendant continues to discriminate against Mr. Meggs, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[7]

34. If the Defendant's facility is one which was designed and constructed for first occupancy after January 26, 1993[8] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

35. Pursuant to 28 C.F.R. § 36.402(a)(1) "any alteration" made to the Subject Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Meggs, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[9] Discovery in this matter will reveal if and when such alterations have taken place at the Subject Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Subject Property into compliance with the ADA.

36. Pursuant to 28 C.F.R. § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is

---

[6] 42 U.S.C. § 12181(b)(2)(A)(ii)

[7] 42 U.S.C. § 12181(b)(2)(A)(iii)

[8] as defined by 28 C.F.R. § 36.401(a)(2)

[9] 28 C.F.R. § 36.402(a)(2)

readily achievable.

37.     28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

    a.  Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

    b.  Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

    c.  Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

38.     Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

39.     Mr. Meggs is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted.  The public interest would not be disserved by the issuance of a permanent injunction.

40.     Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

41. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Mr. Meggs injunctive relief, including an order to require the Defendant to alter the Subject Property and make the Subject Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the Defendant cure their violations of the ADA.[10]

**WHEREFORE,** Plaintiffs respectfully demand:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to cure all ADA violations existing at the Subject Property listed herein or later found through discovery; to make the Subject Property accessible to and usable by individuals with disabilities; and to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to maintain the required accessible features at the Subject Property.

d. An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

---

[10] 42 U.S.C. § 12188(b)(2)

## COUNT II

### Violation of Colorado Anti-Discrimination Act, C.S.R. § 24-34-601 *et seq*. (CADA)

42. The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

43. JOHN MEGGS is a disabled individual as defined by C.S.R. § 24-34-301(2.5).

44. Defendant's facility is a place of public accommodation as defined by C.S.R. § 24-34-601(1).

45. Colorado law provides that no person shall be discriminated against in regard to public accommodations on the basis of disability.[11]

46. Pursuant to C.S.R. § 24-34-602(1) Mr. Meggs is authorized to bring a private action in any court of competent jurisdiction and to receive monetary damages.

47. Pursuant to C. S. R. § 24-34-602(1)(b) a person who violates provisions of the CADA based on a disability "shall be subject to the provisions of section 24-34-802." C. S. R. § 24-34-802 allows for a court order requiring compliance with the provisions of the violated section of the CADA, recovery of actual monetary damages, a statutory fine not to exceed three thousand five hundred dollars ($3,500.00), and an award of attorney fees and costs.

48. Pursuant to C.S.R. § 24-34-604 claims alleging violations of the CADA must be brought within sixty days (60) of the alleged discriminatory act, Mr. Meggs has done so here.

49. Pursuant to 3 CCR 708-1:60.1(A); the CADA, "is substantially equivalent to Federal law, as set forth in the Americans with Disabilities Act, as amended, and the Fair Housing Act concerning disability."

---

[11] C.S.R. § 24-34-601(2)(b)

50.     Pursuant to C.S.R. § 24-34-802(4); "a court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'American with Disabilities Act of 1990', 42 U.S.C. § 12101 et seq., and its related amendments and implementing regulations."

51.     As set forth above, Defendant has violated the Colorado Anti-Discrimination Act by denying Mr. Meggs, and all other disabled individuals, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations afford to the public at a place of public accommodation.

52.     As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Meggs has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation.

**WHEREFORE**, Plaintiffs respectfully demand:

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the CADA.

c. An injunction ordering Defendant to immediately comply with the CADA by removing all architectural barriers listed herein or later found through the normal course of discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendant to maintain the required accessible features at the Subject Property as required by the CADA to cease its discriminatory practices.

f. Other relief that this Court deems just and proper and is allowable under the CADA.

Respectfully submitted on this 20th day of October 2022,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
Direct (609) 319-5399
Office (609) 236-3211
Fax (609) 900-2760
js@shadingerlaw.com
Attorney for Plaintiffs,
*John Meggs and Access 4 All, Inc.*